UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DENNIS S. PRATER,

                Plaintiff,

v.                                                   Case No.  5:06-cv-92-Oc-10GRJ

LINDA S. McMAHON[1], Acting Commissioner of
Social Security,

                Defendant.
_____/

## REPORT AND RECOMMENDATION[2]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits.  (Doc. 1.)  The Commissioner has answered (Doc. 4) and both parties have filed briefs outlining their respective positions.  (Docs. 7 & 8.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On September 9, 2002, Plaintiff protectively filed an application for a period of disability and disability insurance benefits claiming a disability onset date of November 22, 2001. (R. 58-60.)  Plaintiff's application was denied initially (R. 29-30), and upon

---

[1] On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

reconsideration. (R. 32-33.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted Plaintiff's administrative hearing on February 15, 2005 (R. 310-335) and issued a decision unfavorable to Plaintiff on July 6, 2005. (R.15-25.) The Appeals Council denied Plaintiff's request for review on July 29, 2005. (R. 11-14.) The Plaintiff filed a request for an extension of time to file a civil action and on February 10, 2006 the Appeals Council granted Plaintiff a thirty day extension of time to file a civil action. (R. 5.) On March 9, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the

---

[3] See 42 U.S.C. § 405(g).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Commissioner's decision.[5] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[6] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[9]

The ALJ must follow five steps in evaluating a claim of disability.[10]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[11] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[5] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[6] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[7] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[13] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[14] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[15]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[16] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[17] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[18]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when

---

[12] 20 C.F.R. § 404.1520(c).

[13] 20 C.F.R. § 404.1520(d).

[14] 20 C.F.R. § 404.1520(e).

[15] 20 C.F.R. § 404.1520(f).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[17] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[18] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

the claimant cannot perform a full range of employment at the appropriate level of exertion.[19] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[21] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[22] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[23]

### III. **SUMMARY OF THE EVIDENCE**

Plaintiff was born on December 5, 1942 and was sixty-two (62) years old at the time of the hearing. (R. 314.) Plaintiff has a high school education and completed about one year of college. (R. 314.) Plaintiff has past relevant work history as a manufacturing supervisor. (R. 65.) Plaintiff contends that he has been unable to work since November

---

[19] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[20] Walker at 1003.

[21] Wolfe at 1077-78.

[22] See id.

[23] See Doughty at 1278 n.2.

22, 2001, due to pain in his back which radiated into his legs, pain in his shoulders and a cardiac problem. (R. 319-334.)

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that Plaintiff suffers from degenerative disc disease, status-post lumbar laminectomy, chronic lower back pain and atypical chest pain. The ALJ determined that Plaintiff is incapable of performing his past relevant work but that he retains the residual functional capacity (RFC) to perform a limited range of "light work", as defined by 20 CFR § 404.1567. (R. 23.)

***The Medical Evidence***

With regard to medical evidence of treatment before the one month relevant period of time at issue in this case, the records begin with a diagnosis of bursitis in Plaintiff's right shoulder in June, 1999, after which Plaintiff was treated with physical therapy for one month. (R. 145-149.) An MRI of the shoulder in August, 1999 was negative. (R. 141-142.)  In October, 1999, Plaintiff was treated by Chad Watkins, D.P.M, for plantar fascitis of the left foot. Plaintiff also complained to Dr. Watkins of numbness and tingling in the digits as well. Plaintiff reported that he was taking Indocin for his arthritis that somewhat, but not completely, relieved his pain. (R. 139.)

The first medical evidence of record that concerns Plaintiff's back pain, begin on September 20, 2001, when Plaintiff saw his family doctor, Dr. Smolarski, with complaints of back pain. Plaintiff reported using Lortab 7.5 mg, along with some Advil, which Plaintiff reported provided some temporary relief. (R. 111.) On January 18, 2002, Plaintiff returned to Dr. Smolarski for a follow-up after a consultation with Dr. H. Huntt, M.D., who performed an MRI of Plaintiff's spine. (R. 106.) Dr. Huntt found there was

scar tissue that was causing nerve compression and Plaintiff was referred to Dr. Michael Hill, a neurosurgeon. Plaintiff was using Lortab "on a fairly regular basis," in combination with Advil. Plaintiff also had chest pains that were considered atypical. Dr. Smolarski diagnosed Plaintiff with hyperlipidemia, medication reaction from both Lipitor and possibly Advil, back pain and neuralgia. (R. 106.)

Plaintiff was treated by Dr. Jose Rosado, M.D., a cardiologist whose treatment notes indicate that during the period from February, 2001 to August, 2002, Plaintiff was doing well from a cardiac standpoint. While Plaintiff experienced atypical chest pain, his blood pressure was typically well-controlled at home. A stress test performed in February, 2001 was within normal limits. (R. 150-160.)

On December 13, 2001, Plaintiff saw Dr. Huntt, complaining of chronic backaches with intermittent radiation to the buttocks. Dr. Huntt recommended an MRI. (R. 167.) On December 27, 2001 Plaintiff returned to Dr. Huntt, after the MRI. Dr. Huntt noted that the MRI of the lumbar spine showed scarring from previous surgery at L5-S1, causing mild stenosis, as well as diffuse degenerative disc disease. Dr. Huntt noted, however, that Plaintiff reported the weakness in getting up on his toes and the pain had "significantly diminished." Plaintiff told Dr. Huntt "he would like to give it a little more time, since it is improving." Dr. Huntt agreed to wait and then if there was a recurrence over the next several weeks Dr. Huntt would refer Plaintiff for epidural treatments or refer him to a neurosurgeon. (R. 166-67.) Notably, Plaintiff did not return to Dr. Huntt until almost three months later, on March 22, 2002. At that time Plaintiff complained of pain radiating from the back into the hips and buttocks and down the lower extremities. (R. 166.) Dr. Huntt noted that "most severe pain has improved somewhat but he

continues to be limited." (*Id.*) Dr. Huntt further noted that Plaintiff's electromyography and nerve conduction studies were consistent with a finding of lumbar radiculopathy. (R. 163.)

In April, 2002, Plaintiff was treated by Michael Hill, M.D. and was referred for lumbar epidural steroid injections. Plaintiff underwent three injections by Cesar Euribe, M.D., a pain management specialist. Although the first two treatments helped, Plaintiff complained that the third injection made him worse. Dr. Euribe then referred Plaintiff to physical therapy and renewed his prescription for Lortab. (R. 173-176.) When Plaintiff returned to Dr. Hill in September, 2002, he complained of neck and upper extremity pain. Dr. Hill opined that Plaintiff was not a surgical candidate and that he possibly had some sort of fibromyalgia syndrome. (R. 170.)

In January, 2003, Plaintiff saw Glenn Rechtine, M.D., a surgeon, for evaluation of his neck and lower back pain, both of which Plaintiff reported radiated to his extremities. Dr. Rechtine recommended that Plaintiff undergo two weeks of physical therapy, which would then progress to a home exercise program. Plaintiff was permitted to return to activity as tolerated. (R. 209-213.)

In February, 2003, an MRI of Plaintiff's lumbar spine showed multilevel degenerative disc changes of the discs and end plates. (R. 214.) Progress notes from Dr. Rechtine in April, 2003, disclose that Plaintiff complained of lower back pain radiating to the legs, with numbness and tingling in the legs. Plaintiff reported receiving moderate relief from the use of pain medication. On examination, straight leg raising was negative and Plaintiff's gait and affect were unremarkable. Plaintiff reported that he

could not sit or stand for more than 10 minutes at a time and that he got less than 2 hours per sleep at night. (R. 231-234.)

An MRI of Plaintiff's cervical spine in October, 2003 showed mild degenerative disc disease at C3-4, C4-5, and C6-7. (R. 223-224.) Plaintiff saw Gregory Howell, M.D. on October 31, 2003, at which time, Dr. Howell opined that while Plaintiff was complaining of lower back and neck pain, Dr. Howell detected no neurological deficits and concluded that Plaintiff was not a surgical candidate and recommended physical therapy and anti-inflammatory medications. (R. 226-227.)

Plaintiff saw R. Kim Etheredge, D.C. in January, 2004 for complaints of neck and right arm pain, consistent with radiculopathy. Dr. Etheredge noted that the neurological examination was negative and he recommended conservative care. (R. 228.) Plaintiff returned to Dr. Rosado in February, 2004, and was again noted to be doing well from a cardiac standpoint. Plaintiff's examination was negative and his blood pressure was reasonably well controlled. Dr. Rosado noted that Plaintiff had atypical chest pain, without other cardiac symptoms. (R. 229-230.)

X-Rays taken of Plaintiff's cervical spine in May, 2004 were negative. An MRI of the cervical spine showed bulging in the discs at several levels and an MRI of the lumbar spine showed disc desiccation and bulging. Nerve conduction studies of the lower extremities were consistent with sensory neuropathy and possible L5 radiculopathy on the left side. (R. 236-238.)

Progress notes from Gulf Coast Orthopaedic disclose that in July and August 2004 Plaintiff underwent re-exploratory lumbar laminotomy and foraminotomy and discectomy with scar debridement, performed by Alfred Bonati, M.D. At the post-

operative follow-up in August, 2004, Plaintiff had minimum pain and was doing very well. It was noted that when Plaintiff was telephoned at home about his status, Plaintiff reported that "he is very pleased and very happy with the surgery and is doing much better." (R. 235, 239-258.)

In November, 2004 Plaintiff returned to Dr. Rosado, who noted that Plaintiff had no problems other than elevated cholesterol and atypical chest pain. Plaintiff's blood pressure was well-controlled and he denied chest pain or shortness of breath. (R. 283.)

***The ALJ's Decision***

The ALJ, after reviewing the medical evidence of record found that during the period of time at issue, Plaintiff's lumbar spine degenerative disc disease, status-post lumbar laminectomy, chronic lower back pain and atypical chest pain were "severe" impairments, as defined in the Regulations, but that they did not meet or medically equal the criteria of any impairments listed in Appendix 1, Subpart P, Regulations No. 4.

The ALJ then made the determination as to whether Plaintiff retained the RFC to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy. In making this assessment, the ALJ considered all medical opinions, which are statements from acceptable medical sources that reflect judgments about the nature and severity of Plaintiff's impairments and resulting limitations. The ALJ noted that "[n]o treating physician has expressed an opinion regarding Plaintiff's functional capacity or on the issue of disability." (R. 22.)

The ALJ found Plaintiff's testimony of disabling pain "inconsistent with the weight of the medical evidence, was not wholly credible and therefore failed to support a finding of disability." (R. 22.) The ALJ stated that the "during the period of time herein at

issue, the claimant had a chronic backache with intermittent radiation to the buttocks. MRI showed mild stenosis and diffuse degenerative disease; however, his back pain appeared reasonably well controlled with the use of Lortab and his functioning was largely intact. He was repeatedly evaluated for surgery during this period of time and was told to continue conservative care."[24]  The ALJ also noted that Plaintiff's daily activities included driving a car, shopping and occasionally playing golf.[25]

The ALJ noted that in January and May of 2003, non-examining doctors from the State agency assessed Plaintiff's physical ability to perform work-related activities in light of the medical evidence of record and concluded that Plaintiff had the residual functional capacity to perform a limited range of light work.[26]  The ALJ noted that "these assessments were made well after the period of time herein at issue, and that the claimant's spine disorder has become progressively worse over time."[27]

After having considered all of the evidence the ALJ, found that during the period of time at issue, Plaintiff had the residual functional capacity to lift and/or carry up to ten pounds on a frequent basis and up to 20 pounds on an occasional basis; to stand and/or walk for a total of up to six hours per eight-hour workday; and to sit (with normal breaks) for a total of up to six hours per eight-hour work day; in addition, he was to

---

[24] R. 22.

[25] Id.

[26] R. 201-208, 215-222.

[27] R. 22.

avoid all climbing of ropes, ladders or scaffolds and more than occasional balancing, stooping, kneeling, crouching, crawling or climbing of stairs or ramps.[28]

The ALJ found that Plaintiff during the time period at issue could not perform his past relevant work and that he had no transferable skills. However, the ALJ did find that Plaintiff could have performed a limited range of "light" work as defined by 20 CFR § 404.1563, and thus a finding of "not disabled" was reached. The ALJ found that claimant's "additional limitations did not significantly erode the occupational base reflected in Rule 202.08. Furthermore, the ALJ found that during the time period at issue, Plaintiff could have made a successful adjustment to work that existed in significant numbers in the national economy.[29]

## IV. DISCUSSION

Plaintiff's sole argument is that the ALJ improperly applied the law in the Eleventh Circuit in finding Plaintiff's subjective complaints of pain not credible. The Commissioner argues that "the ALJ in the case at bar properly and thoroughly considered Plaintiff's subjective complaints both singly and in combination before discrediting them as inconsistent and unsupported by the medical evidence and record as a whole."[30] The Commissioner further argues that it was "Plaintiff's burden to prove his disability began during the relevant period at issue in this case, which was between

---

[28] Id.

[29] R. 23.

[30] Doc. 8.

November 22, 2001, his alleged onset date and December 31, 2001, the date last insured."[31]

The relevant period of time is an important issue in this case because Plaintiff was required to establish that his disability began during the one month time frame from November 22, 2001 to December 31, 2001. The fact that Plaintiff's condition may have subsequently deteriorated is insufficient to establish disability in this case.  Further, while the Plaintiff may have presented evidence that he had a diagnosis of degenerative disc disease during the relevant time frame at issue, that alone is insufficient. The Plaintiff was required to establish that he was functionally limited during the relevant period.

The law concerning the analysis of subjective complaints of pain is well settled. In evaluating disability, the ALJ must consider all of a claimant's impairments, including his subjective symptoms, such as pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[32] The Eleventh Circuit has set forth a three-part test for determining when a disability may be established based on subjective complaints of pain.[33]  The "pain standard" requires that the plaintiff first produce medical or other evidence of an underlying medical condition.  Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be

---

[31] Id.

[32] 20 C.F.R. § 404.1528.

[33] Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

reasonably expected to give rise to the alleged pain.[34] "Pain alone can be disabling, even when its existence is unsupported by objective evidence."[35] However, a claimant's subjective complaints of pain do not conclusively establish a disability unless accompanied by medical evidence.[36]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[37] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[38]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[39] assessment to Plaintiff's subjective complaints by noting that during the relevant period of time Plaintiff presented objective medical evidence that established that lumbar spine degenerative disc disease, status-post lumbar laminectomy, chronic lower back pain and atypical chest pain were medical impairments. (R. 21.) Once

---

[34] Id.

[35] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[36] 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms *shall not alone be conclusive evidence of disability* as defined in this section; there *must* be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability") (emphasis added).

[37] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[38] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[39] Marbury, 957 F.2d at 839.

Plaintiff met this initial burden, however, the ALJ correctly applied the second part of the pain standard and found that Plaintiff's complaints regarding his level of pain and inability to work were not wholly credible, stating that Plaintiff's allegations were "inconsistent with the weight of the medical evidence and therefore failed to support a finding of disability."[40]

In making this finding, the ALJ conducted a thorough examination of Plaintiff's medical history, including Plaintiff's complaints of pain. The ALJ recognized and properly noted that Plaintiff complained of "atypical chest pain and chronic lower back pain,"[41] that Plaintiff used "Lortab...for lower back pain,"[42] that Plaintiff had "chronic backaches with intermittent radiation to the buttocks,"[43] and that Plaintiff "complained of lower back pain radiating to the legs."[44]

In accordance with the pain standard, the ALJ in this case articulated his reasons for discounting Plaintiff's complaints of pain during the one month relevant period of time at issue in this case. The ALJ specifically found that although an MRI showed "mild stenosis and diffuse degenerative disease ... [Plaintiff's] back pain appeared reasonably well controlled with the use of Lortab and his functioning was largely intact." The ALJ also found that Plaintiff's claims during the relevant period that he had a limited ability to stand or walk were not credible in view of the medical evidence of record, which

---

[40] R. 22.

[41] R. 20

[42] R. 20.

[43] Id.

[44] Id.

established that the Plaintiff " was repeatedly evaluated for surgery during this period of time and was told to continue conservative care."[45] Furthermore, the ALJ noted that the non-examining doctors from the State agency - who concluded that Plaintiff had the RFC to perform light level work during the relevant period of time and thereafter - were made "well after the period of time herein at issue ... [when] .. the claimant's spine disorder had become progressively worse over time."[46]

Lastly, the ALJ in his analysis properly noted that the Plaintiff's activities of daily living, including driving a car, shopping and occasionally playing golf, were inconsistent with his claims that he had a limited ability to stand and walk. While the Plaintiff's activities of daily living are not conclusive evidence that he was not disabled during the relevant period of time, these activities are, nonetheless, consistent with the ability to perform light level work.

Accordingly, the Court concludes that the ALJ followed the Eleventh Circuit pain standard in analyzing whether the Plaintiff's subjective complaints were credible. The ALJ articulated specific reasons for rejecting Plaintiff's testimony that he had a limited ability to stand or walk, which reasons were based upon the medical evidence and other substantial evidence of record. Where, as here, an ALJ has made a clearly articulated credibility finding based upon substantial supporting evidence in the record, a reviewing court should not disturb the findings by the ALJ.

---

[45] R. 22.

[46] Id.

## V. **RECOMMENDATION**

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED.**

**IN CHAMBERS** in Ocala, Florida, on February 6, 2007.

*[signature]*
GARY R. JONES
United States Magistrate Judge

Copies to:
The Honorable Wm. Terrell Hodges
Senior United States District Judge

Counsel of Record